**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

BARBARA E.S.,[1]

                Plaintiff,

v.

FRANK BISIGNANO,[2]
Commissioner of the Social Security Administration,

                Defendant.

Case No. 3:24-cv-00278-SLG

## DECISION AND ORDER

On or about March 10, 2021,[3] Barbara E.S. ("Plaintiff") protectively filed an

application under Title II of the Social Security Act,[4] with an alleged onset date of June

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] As of May 7, 2025, Frank Bisignano is the Commissioner of the Social Security Administration and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] The application summary, not the application itself, appears in the Court's record and is dated September 30, 2021. A.R. 239. Pursuant to 20 C.F.R. §§ 416.340-350, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits. Therefore, March 10, 2021 is considered Plaintiff's application filing date. A.R. 113.

[4] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought a claim under Title II only. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

15, 2020.[5]  Plaintiff was considered "closely approaching advanced age" (50-54) for most of the relevant disability period.[6]  Her past relevant work included work as a cocktail server, bartender and van driver.[7]  Plaintiff's claims were denied by the agency at the initial level and on reconsideration.[8]  After a hearing before an Administrative Law Judge ("ALJ"), the ALJ issued an unfavorable decision on January 11, 2024.[9]  On October 25, 2024, the Appeals Council denied Plaintiff's request for review.[10]

Plaintiff has exhausted her administrative remedies and timely filed a Complaint seeking relief from this Court.[11]  Plaintiff's Opening Brief asks the Court to reverse the Commissioner's decision and remand for further proceedings under sentence four of 42 U.S.C. § 405(g).[12]  The Commissioner filed the Administrative Record as his Answer and

---

[5] Administrative Record ("A.R.") A.R. 113, 239.  Plaintiff's initial alleged onset date was June 15, 2020.  A.R. 239.  Through counsel at Plaintiff's hearing on November 27, 2023, she amended her application to reflect an alleged onset date of May 15, 2021.  A.R. 131.  However, the ALJ's decision reflects the original alleged onset date of June 15, 2020.  A.R. 113.  Plaintiff does not appear to contest the ALJ's use of the original alleged onset date.  *See* Docket 9.

[6] A.R. 121.  *See* 20 C.F.R. §§ 404.1563, 416.963.

[7] A.R. 120.

[8] A.R. 160–61.

[9] A.R. 113–22.

[10] A.R. 1–6.

[11] Docket 1 (Plaintiff's Compl.).

[12] Docket 9 at 18 (Plaintiff's Brief).

Case No. 3:24-cv-00278-SLG, *Barbara E.S. v. Bisignano*
Decision and Order
Page 2 of 28

a Response Brief.[13]  Plaintiff filed a Reply Brief.[14]  Oral argument was not requested by either party and was not necessary to the Court's decision.  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[15]  For the reasons discussed below, Plaintiff's request for relief at Docket 9 is GRANTED.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[16]  "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[18]  In reviewing the agency's determination, a court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[19]  If the evidence is susceptible to more than one rational

---

[13] Docket 8 (Notice of Lodging Admin. Record); Docket 10 (Commissioner's Br.).  As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record."  *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[14] Docket 12 (Reply).

[15] 42 U.S.C. § 405(g).

[16] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[17] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[18] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[19] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

interpretation, the ALJ's conclusion must be upheld.[20]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[21]  An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[22]  The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered[.]"[23]  This duty exists "even when the claimant is represented by counsel."[24]

## II.  DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[25]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the

---

[20] *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020) (citation, alteration, and internal quotation marks omitted).

[21] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

[22] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[23] *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)).

[24] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted).

[25] 42 U.S.C. § 423(a).

Act but who are age 65 or older, blind, or disabled.[26]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[27]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[28]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[29]  A claimant bears the burden of proof at steps one through four to make a prima facie showing of disability.[30]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[31]  The Commissioner can

---

[26] 42 U.S.C. § 1381a.

[27] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[28] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[29] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[30] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[31] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[32] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[33]  *The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2025.  The ALJ then determined that Plaintiff had not engaged in substantial activity since June 15, 2020, the alleged onset date.*[34]

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[35]  *The ALJ determined that Plaintiff had the following severe impairments: coronary artery disease ("CAD") with status-post aortic dissection as well as status-post pacemaker implantation.  The ALJ determined that Plaintiff's arthritis was non-severe.*[36]

**Step 3.**  Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt.

---

[32] *Tackett*, 180 F.3d at 1101 (emphasis in original).

[33] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[34] A.R. 115.

[35] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[36] A.R. 115–16.

P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[37] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[38]

Residual Functional Capacity. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[39] Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[40] *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations: never climbing ladders, ropes, and scaffolds; occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; and avoiding concentrated exposure to extreme cold and heat, humidity, pulmonary irritants, such as fumes, odors, dusts, gases, and areas of poor ventilation and workplace hazards.*[41]

---

[37] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[38] A.R. 116.

[39] 20 C.F.R. §§ 404.1545(a), 416.945(a).

[40] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[41] A.R. 116. "Light work" includes walking and standing for six to eight hours per day, lifting no more than 20 pounds and lifting or carrying 10 pounds frequently. "Frequently" means "occurring from one-third to two-thirds of the time." *See* 20 C.F.R. § 404.1567(b), Social Security Ruling ("SSR") 83-10, 1983–1991 Soc.Sec.Rep.Serv.24, 1983 WL 31251 at *5–6. *See Orn v. Astrue*,

**Step 4.**  Determine whether the claimant is capable of performing past relevant work.  At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC.  If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[42]  Otherwise, the evaluation process moves to the fifth and final step.[43]  *The ALJ determined that Plaintiff was able to perform her past relevant work as a cocktail server (DOT #311.477-018) and bartender (DOT #312.474-010).[44]*

**Step 5.**  Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.[45]  *The ALJ determined that, in addition to her past relevant work, Plaintiff could have worked as a cashier (DOT #211.462-010); as a sales attendant (DOT #299.677-010); and as a routing clerk (DOT #222.687-022).[46]*

The ALJ concluded that Plaintiff was not disabled at any time from June 15, 2020, the alleged onset date, through January 11, 2024, the date of the ALJ's decision.[47]

---

495 F.3d 625, 636 (9th Cir. 2007) (Social Security Rulings are "binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases.").

[42] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[43] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[44] A.R. 120.

[45] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[46] A.R. 121–22.

[47] A.R. 122.

# IV.    DISCUSSION

Plaintiff is represented by counsel in this appeal.  Plaintiff alleges that the ALJ's rejection of the opinion of her treating provider, Advanced Registered Nurse Practitioner Jennifer Archer ("ARNP Archer"), was not supported by substantial evidence in the record and that the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.[48]  The Commissioner disagrees and asks the Court to affirm the ALJ's decision.[49]

## A.    Medical Opinion Evidence

Plaintiff alleges that the ALJ erred by discounting ARNP Archer's medical opinion. Specifically, Plaintiff asserts that it was error for the ALJ to discount the opinion on the basis that Plaintiff had a normal gait and normal coordination at medical office visits, "showed improvement with [Cardiac Resynchronization Therapy] pac[i]ng," and Plaintiff's providers did not note edema or recommend elevating her legs to relieve edema symptoms.[50]  She contends that the ALJ's conclusion that Plaintiff's normal gait and coordination are incompatible with ARNP Archer's standing/walking restrictions is an "apples-to-oranges" analysis.[51]

Plaintiff asserts that ARNP Archer based the walking/standing restrictions not on a neurological or orthopedic condition, but on Plaintiff's diminished stamina, endurance,

---

[48] Docket 9 at 9–18.

[49] Docket 10 at 1–5.

[50] Docket 9 at 11–16; A.R. 119–20.

[51] Docket 9 at 14.

Case No. 3:24-cv-00278-SLG, *Barbara E.S. v. Bisignano*
Decision and Order
Page 9 of 28

and episodic edema related to her cardiovascular impairments, and her extensive chest scarring from repeated heart surgeries.[52]  Regarding the ALJ's reference to "improvement with CRT pac[ ]ing," Plaintiff asserts that it is unclear whether the ALJ intended to discount ARNP Archer's opinion based on this; but if the ALJ did use this as a reason to discount the opinion, the ALJ erred because "it is inappropriate for an ALJ to interpret raw medical data."[53]  Plaintiff also alleges that the ALJ's discounting of ARNP Archer's medical opinion was not supported by substantial evidence because the ALJ stated that Plaintiff "routinely did not present lower extremity edema," but he cited to several records that did not include statements about edema and failed to cite other records that reported increased or worsening edema and the need to increase Plaintiff's medications for edema..[54]

The Commissioner asserts that the ALJ's reasons for discounting ARNP Archer's are supported by substantial evidence and his review and interpretation of the medical record is within the ALJ's mandate under the SSA's regulations.[55]  The Commissioner noted that the ALJ cited to records showing Plaintiff's gait and station were normal and she had good coordination, contradicting ARNP Archer's opinion that Plaintiff could not stand and walk for more than two hours in an eight-hour workday.[56]  The Commissioner points to the ALJ's reference to a cardiology visit during which Plaintiff reported a

---

[52] Docket 9 at 11,14; A.R. 819.

[53] *Id. at* 16.

[54] *Id.* at 14–15; Docket 12 at 3, n.1.

[55] Docket 10 at 2–5.

[56] *Id.* at 3.

resolution of her lower extremity edema and improvement with her heart palpitations and cardiac pacing.[57]

1.    *Legal Standards*

Plaintiff protectively filed her application on or about March 10, 2021; therefore, the revised regulations, effective March 27, 2017 and governing the evaluation of medical evidence, are applicable here.

Under the revised regulations, the definition of what constitutes a medical opinion has been narrowed, focusing on what the claimant can do despite her impairments and what work-related limitations are present.[58]  The revised regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i)     Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)    Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)   Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

---

[57] *Id.* at 3.

[58] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).

Case No. 3:24-cv-00278-SLG, *Barbara E.S. v. Bisignano*
Decision and Order
Page 11 of 28

      (iv)    Your ability to adapt to environmental conditions, such as temperature or fumes.[59]

The revised regulations further provide that the ALJ no longer gives any particular weight to a medical opinion based on its source, thereby eliminating the treating source rule.[60] Instead, the ALJ considers the persuasiveness of a medical opinion based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion.[61]

Supportability and consistency are considered the most important factors for evaluating persuasiveness.[62] Supportability and consistency are explained as follows in the regulations:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical

---

[59] 20 C.F.R. § 404.1513(a)(2).

[60] *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01 (Jan. 18, 2017), 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).

[61] 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

[62] The regulations provide, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (for claims filed on or after March 27, 2017).

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[63]

Generally, these are the only two factors the ALJ is required to address in the decision.[64] However, when two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how "the other most persuasive factors" were considered.[65] The revised regulations provide that the opinion of "a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty" than that of a source who is not a specialist in this area."[66] In the Ninth Circuit, the current regulatory framework no longer requires ALJs to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining medical source's opinion.[67] However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."[68]

    *2.    Medical Opinion of ARNP Archer*

---

[63] 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

[64] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

[65] 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

[66] 20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4)

[67] *Woods v. Kijakazi,* 32 F.4th 785, 787 (9th Cir. 2022).

[68] *Woods,* 32 F.4th at 792.

On July 22, 2022, ARNP Archer completed an attorney-provided disability questionnaire.[69]  She opined that Plaintiff could lift less than 10 pounds and stand and walk less than two hours in an eight-hour workday.[70]  She opined that Plaintiff's impairments affected her ability to sit, stand, and push and pull with the upper and lower extremities due to "severe carotid artery disease, hypertension, aortic valve replacement, aortic dissection with extensive surgical repair," peripheral artery disease, and because she was "on blood thinners [and] multiple medications" and had had a pacemaker implantation.[71]  ARNP Archer opined that Plaintiff could never climb, kneel, crouch or crawl and had limitations in reaching, handling, fingering, and feeling because of "extensive chest scarring from previous procedures and very limited strength [and] endurance due to extensive cardiovascular disease."[72]

The ALJ found ARNP Archer's opinion unpersuasive.  An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.[73]  Here, the ALJ discounted ARNP Archer's opinion that Plaintiff was only able to perform work at a level similar to the sedentary exertional level with limited use of her upper extremities and postural, manipulative, and environmental limitations.[74] The ALJ cited to the objective evidence in the record showing that Plaintiff "routinely

---

[69] A.R. 817–20.

[70] A.R. 817.

[71] A.R. 818.

[72] A.R. 819.

[73] *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004).

[74] A.R. 119.

presented a normal heart rate and rhythm," with "smooth and symmetrical" chest wall movement, and a normal gait and coordination.[75]  However, the ALJ failed to connect these normal findings with ARNP Archer's exertional limitations related to Plaintiff's diminished strength and endurance.[76]  Without explanation, it also is difficult to understand how a normal gait and station and normal heart rate and chest movement relate to ARNP Archer's exertional limitations.

The consistency of a medical opinion with treatment notes is a relevant factor in the ALJ's evaluation of that opinion.[77]  Here, the ALJ discounted ARNP Archer's opinion for the given reason that ARNP Archer "noted that the claimant showed improvement with CRT pac[]ing" and in a record from March 2023, ARNP Archer noted that Plaintiff "presented no complaints or concerns, and her symptoms significantly improved overnight."[78]  However, neither of the records that the ALJ attributed to ARNP Archer were in fact records made by ARNP Archer and neither record showed that ARNP Archer's opinion conflicted with the overall record or her own treatment notes.[79]

The ALJ's reference to Plaintiff's CRT pacing improvement appears to be based on a single record from June 6, 2022, in which Nisreen Yaghmor, M.D., of the Iowa Heart Center, noted that on that date Plaintiff showed improvement in CRT pacing to 94%.[80]

---

[75] *Id.*

[76] A.R. 819.

[77] *See Ghanim,* 763 F.3d at 1161; *Orn v. Astrue,* 495 F.3d 625, 634 (9th Cir. 2007).

[78] A.R. 119–20.

[79] A.R. 119, 702, 933.

[80] A.R. 702.

Another record that the ALJ inaccurately attributed to ARNP Archer was from a March 12, 2023 overnight hospital stay at Monroe County Hospital.[81]  The provider, Joshua Harris, D.O., noted that Plaintiff had no complaints and her symptoms had improved overnight after Plaintiff had reported to the emergency department the previous day for significant dizziness and suspected heart attack.[82]  The treatment notes authored by ARNP Archer describe chronic edema, hospitalizations for dizziness and hypokalemia, as well as a report of chest pressure, chest pain, and shortness of breath.[83]

Moreover, there is no medical expert testimony or medical opinion interpreting the "CRT pac[ ]ing" cited by the ALJ.[84]  In the Ninth Circuit, an ALJ may not render his own medical opinion and may not independently assess clinical findings.[85]  If the ALJ suspected that the cited test results supported a greater than sedentary RFC, the ALJ

---

[81] A.R. 119–20, 933.

[82] A.R. 933.

[83] *See e.g.,* A.R. 832 ("has edema chronically and takes lasix prn"); 846 ("Iowa Heart increased lasix to 80mg daily and [she] feels like that has made a huge improvement in her swelling"), 866 (reported increased swelling with increase in humidity); 870 (1+ bilateral pedal edema); 976 ("check up after hospitalization in March for dizziness and hypokalemia"); 996–98 ("was requesting app[ointment] for edema and requested IV Lasix [,] but taken to the ER" for critically low potassium, increased lower extremity edema, one day of chest pressure, chest pain, and shortness of breath).

[84] A.R. 119.

[85] *See Tackett v. Apfel,* 180 F.3d 1094, 1102–03 (9th Cir. 1999); *see also Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999)( An ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; because the ALJ is "simply not qualified to interpret raw medical data in functional terms[.]"); *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975) (holding that an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record).

could have contacted ARNP Archer, issued interrogatories, or called a medical expert to testify.[86]

In sum, the ALJ did not provide an adequate explanation supported by substantial evidence to reject ARNP Archer's medical opinion. This error is not harmless because ARNP Archer's opinion precluded Plaintiff from performing more than sedentary work, rendering an individual of Plaintiff's age, education, and experience "disabled" under the SSA's Medical-Vocational Guidelines.[87] On remand, the ALJ should reconsider all of the relevant evidence in the context of ARNP Archer's opined limitations.[88]

## B. Subjective Reports and Testimony

Plaintiff's initial application alleged that she could not work due to chronic ischemic heart disease with or without angina and diseases of the aortic valve.[89] In her function reports from December 22, 2021 and August 15, 2022, Plaintiff reported that she lived alone and could do laundry, dishes, pick up, vacuum, dust, and tried to garden in summer, but also reported that she had to take breaks because of shortness of breath and pain in her hands and legs.[90] She indicated that she had difficulty sleeping because of pain and

---

[86] *See Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014) (An ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered.") (citation omitted).

[87] 20 C.F.R., Part 404, Subpt. P, App'x 2, § 201.12.

[88] An ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006); *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984).

[89] A.R. 160.

[90] A.R. 293–95, 321–23.

swelling.[91]  She reported having difficulty with personal care at times.[92]  She indicated that she was able to prepare simple meals, walk, drive, shop in stores, handle her own finances, engage in hobbies such as watching television, reading, sewing, and painting, and visiting with her grandchildren.[93]  However, she also reported that she was not able to do "a lot" of sewing or painting.[94]  Plaintiff reported that her conditions affected lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, concentration, and using her hands.[95]  She indicated that she could walk one-half of one block before needing to rest for five to 10 minutes.[96]  She indicated that she was not supposed to lift anything heavier than a gallon of milk and needed to wear a brace for her hands.[97]

At the hearing before the ALJ on November 27, 2023, Plaintiff testified that she lived alone, but she did not have a valid drivers' license because she needed to take the drivers' test again.[98]  She reported that her son took her to doctor's appointments.[99]  She

---

[91] A.R. 293.

[92] A.R. 294, 322.

[93] A.R. 295–97, 323–25.

[94] A.R. 297.

[95] A.R. 298, 326.

[96] A.R. 298.

[97] A.R. 326.

[98] A.R. 133–34, 139.

[99] A.R. 134.

indicated that she also tried to walk, but that she was not "very mobile."[100] Plaintiff testified that she gardens for about "ten minutes at a time" before she comes inside to rest and that gardening causes chest pain.[101] She also reported that she could sew, but she needed to take breaks every 45 minutes.[102] She could meet with friends at her house, but she had to cancel about once a week because of symptoms such as chest pain or edema.[103] She testified that she had undergone multiple surgeries for her heart and had a pacemaker that recently needed a new battery.[104] She indicated that she took 80 milligrams of Lasix to reduce edema, primarily in her legs, and that this caused low potassium levels, resulting in more than one hospitalization.[105] She stated that doctors recommended elevating her legs when sitting and recommended drinking lots of water to help with her edema.[106] She testified that she could walk a block to the grocery store, purchase some items, and carry them home, but she indicated that carrying a gallon of milk "really starts affecting my chest."[107] She also testified that she can make dinner for about 10 to 15 minutes before taking a break and can carry a partially full, but not "super

---

[100] *Id.*

[101] A.R. 137, 145.

[102] A.R. 146.

[103] A.R. 145.

[104] A.R. 139–40.

[105] A.R. 140.

[106] A.R. 141.

[107] A.R. 142.

Case No. 3:24-cv-00278-SLG, *Barbara E.S. v. Bisignano*
Decision and Order
Page 19 of 28

full," basket of laundry.[108]  Plaintiff stated that she took nitroglycerin about once a week for chest and jaw pain.[109]

Plaintiff asserts that the ALJ failed to provide "specific, clear, or convincing" reasons for discounting her symptom complaints because they are "inextricably intertwined" with ARNP Archer's medical opinion.[110]  The Commissioner contends that the ALJ provided sufficient reasons for discounting Plaintiff's symptom complaints, which Plaintiff does not challenge, and which are not dependent on ARNP Archer's medical opinion.[111]

### 1. Legal Standards

In evaluating a claimant's subjective symptom complaints, an ALJ must consider the entire record, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."[112]  If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct.[113]

---

[108] A.R. 143–44.

[109] A.R. 144.

[110] Docket 9 at 17.

[111] Docket 10 at 4–5.

[112] 20 C.F.R. § 404.1529(c).

[113] *Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ's assessment has two steps.[114] First, the ALJ determines whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[115] In this first step, the claimant need not "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[116]

Second, if the claimant has satisfied step one and the ALJ has determined that the claimant is not malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms.[117] This standard is "the most demanding required in Social Security cases."[118] Yet this does not mean an ALJ is required to "simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case."[119]

2. *Plaintiff's Symptom Complaints*

---

[114] *Ferguson v. O'Malley,* 95 F. 4th 1194, 1199 (9th Cir. Mar. 14, 2024).

[115] *Id.* (quoting *Garrison,* 759 F.3d at 1014).

[116] *Garrison,* 759 F.3d at 1014 (internal citations and quotations omitted).

[117] *Lingenfelter,* 504 F.3d at 1036 (internal citation and quotation omitted).

[118] *Ferguson,* 95 F.4th at 1199 (citation omitted).

[119] *Smartt v. Kijakazi,* 53 F. 4th 489, 499 (9th Cir. 2022).

Here, the ALJ determined that Plaintiff's impairments had "some support in the evidence … showing long-term chest pain complaints, surgical interventions, pacemaker placement, pursuit of medication treatment, and positive examination findings of chest tenderness."[120] However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the overall medical record.[121] Because the ALJ found Plaintiff's underlying impairments severe and cited no evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptom allegations.

The ALJ provided the following reasons: (a) Plaintiff's treatment was conservative; (b) the objective evidence and physical examinations were inconsistent with her alleged symptoms and limitations; specifically, her consultative examination was "largely unremarkable" and her examination findings were "routinely intact"; and (c) her daily activities "suggest that she is able to function at a level much higher than what is alleged."[122]

For the reasons set forth below, the Court concludes that none of the ALJ's stated reasons for discounting Plaintiff's symptom testimony are specific, clear, and convincing reasons, supported by substantial evidence.

a. *Conservative Treatment*

---

[120] A.R. 118.

[121] *Id.*

[122] A.R. 118–19.

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms."[123] "Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."[124] However, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated."[125] In this case, the ALJ noted that Plaintiff's "acute complications of [Coronary Artery Disease] were largely confined and treated by surgical intervention prior to the alleged onset date."[126] The ALJ pointed to evidence in the record after Plaintiff's alleged onset date, and concluded that the medication regimen of Lasix for her heart condition, replacement of a pacemaker battery, and use of an anticoagulation agent, were conservative treatment modalities and Plaintiff responded well to them.[127]

The Ninth Circuit has held that avoiding strenuous activities, engaging in physical therapy, and the use of ongoing pain medication are conservative modalities, but that other modalities, such as surgery and epidural shots, are not conservative treatment.[128] In this case, Plaintiff's Lasix and anticoagulation medications and her use of a pacemaker following surgical intervention are not conservative treatments similar to physical therapy

---

[123] 20 C.F.R. § 404.1529(c)(3).

[124] *Smartt,* 53 F.4th at 500 (internal alteration, citations, and quotation omitted) (The ALJ discounted the claimant's subjective pain testimony based on evidence of "conservative treatment," including physical therapy, temporary use of a neck brace and wheelchair, and ongoing pain medication.).

[125] *Revels,* 874 F.3d at 667.

[126] A.R. 116.

[127] A.R. 118.

[128] *See e.g., Woods,* 32 F.4th at 794; *Smartt,* 53 F.4th at 500; *Revels,* 74 F.3d at 667.

Case No. 3:24-cv-00278-SLG, *Barbara E.S. v. Bisignano*
Decision and Order
Page 23 of 28

or pain medication. Further, the ALJ concluded Plaintiff "routinely did not present lower extremity edema," but as noted above, the ALJ cited to several records that did not include statements about edema and failed to cite other records that reported increased or worsening edema and the need to increase Plaintiff's medications for edema.[129] The record also shows that Plaintiff was hospitalized at least two times for complications, possibly related to the higher prescribed Lasix doses.[130] Her pacemaker's pacing improved to 94% in one record, but other records showed pacing at lower percentages.[131] And as noted above, no medical expert opined as to the significance of the CRT pacing medical data. Moreover, the ALJ did not address Plaintiff's testimony that she had to take nitroglycerin once a week for pain.[132]

In sum, the ALJ's discounting of Plaintiff's testimony because her treatment was conservative is not a specific, clear, and convincing reason supported by substantial evidence in the record.

    *b. Objective Medical Evidence and Physical Examinations*

---

[129] A.R. 118. *See e.g.,* A.R. 741 (reported "worsening lower extremity edema"), 832 ("she has edema chronically and takes Lasix…"), 852 (review of systems negative for peripheral edema), 866–67 ("she does report worsening lower extremity edema"), 871 ("continue Lasix as prescribed in follow up if edema worsens"), 933 ("No pitting edema to bilateral lower extremities"), 946 ("increased ankle edema"), 977 (edema stable for patient), 990 (edema was confirmed on "Problem list"), 996 ("was requesting app[ointment] for edema and requested IV lasix"), 998 ("increased lower extremity edema"), 1000-01 ("not reporting increased edema"), 1002 ("placed on higher dose Lasix … which has helped improve [lower leg] edema"). *See also Garrison,* 759 F.3d at 1017, n. 23 (An ALJ is "not permitted to cherry-pick from … mixed results to support a denial of benefits[.]") (Internal quotation and citation omitted).

[130] *See e.g.,* A.R. 976, 996.

[131] *See e.g.,* A.R. 624 (89% on June 23, 2020), 625 (88% between April 10, 2020 and April 11, 2020), 732 (94% on June 6, 2022), 752 (87% on May 12, 2022).

[132] A.R. 144.

Case No. 3:24-cv-00278-SLG, *Barbara E.S. v. Bisignano*
Decision and Order
Page 24 of 28

"When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."[133] But "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the claimant's symptoms.[134] And, in the Ninth Circuit, the ALJ "must identify the specific testimony that [the ALJ] discredited and explain the evidence undermining it."[135] It is improper for an ALJ to discount a claimant's testimony by "cherry-picking the absence of certain symptoms[.]"[136]

Here, the ALJ acknowledged that Plaintiff had physical limitations due to her conditions, but he pointed to normal findings in the treatment record as inconsistent with her symptom testimony.[137] However, the ALJ's stated reasons are not supported by substantial evidence. The ALJ did not explain how Plaintiff's normal heart rate, rhythm, and movement and normal gait and coordination contradicted her testimony that she limited her activities due to chest pain and fatigue.[138] Rather, the ALJ determined that Plaintiff's chest pain and midsection discomfort were not severe and disabling because

---

[133] *Smartt,* 53 F.4th at 498 (emphasis in original).

[134] *Id.* at 494–95 (citing *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) (internal quotations omitted)).

[135] *Lambert v. Saul,* 980 F.3d 1266, 1268 (9th Cir. 2020). *See also Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015) ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination.").

[136] *Diedrich v. Berryhill,* 874 F.3d 634, 642 (9th Cir. 2017) (internal alteration, citations, and quotation omitted).

[137] A.R. 118–19.

[138] *Id.*

her providers did not report "weight loss, premature aging, muscle atrophy from non-use, or facial expressions such as grimacing."[139]

The ALJ also cites to records describing Plaintiff as "well-nourished and in no acute distress."[140] However, the ALJ does not explain how the chart notes reporting that Plaintiff was well-nourished and in "no acute distress" undermine Plaintiff's testimony regarding her chronic diseases and the resulting functional limitations.[141] Many recent Ninth Circuit district court decisions have held that a chart note of "no acute distress" is not particularly relevant to allegations of chronic symptoms.[142]

In sum, the ALJ's discounting of Plaintiff's testimony as inconsistent with the objective evidence and physical examinations is not supported by substantial evidence.

### c. Daily Activities

In the Ninth Circuit, two grounds have been recognized for using daily activities as a reason to reject a claimant's testimony: (1) the activities contradict the claimant's

---

[139] *Id.*

[140] A.R. 119.

[141] *Id.*

[142] *See e.g. Troy A.H. v. Comm'r of Soc. Sec.,* Case No. 13-cv-03252-JSC, 2022 WL 336846, at *5 (D. Or. Feb. 4, 2022) ("[I]t is questionable whether a chart note of 'no acute distress' is relevant to allegations of chronic symptoms."), *M.D.B. v. Berryhill*, No. 19-CV-02435-LB, 2020 WL 4051863, at *12 (N.D. Cal. July 20, 2020) ("[T]he ALJ did not explain why 'no acute distress' undermines the diagnosis."); *Mitchell v. Saul,* Case No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute distress' do not distract from the findings regarding Plaintiff's chronic conditions."), *report and recommendation adopted sub nom. Mitchell v. Berryhill,* 2020 WL 1017899 (D. Nev. Feb. 28, 2020); *Richard F. v. Comm'r of Soc. Sec.,* Case No. C19-5220-JCC, 2019 WL 6713375 at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony ... 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute.") (citation to the administrative record omitted).

alleged symptoms; or (2) they meet the threshold for full-time work.[143]  At the same time,

"claimants should not be penalized for attempting to lead normal lives in the face of their

limitations."[144]  Here, the ALJ found that Plaintiff's symptom testimony was inconsistent

with her ability to live alone; perform tasks such as washing dishes, sweeping, cooking

simple meals, doing laundry, and household cleaning; go shopping for personal items;

engage in hobbies such as gardening; and operate a motor vehicle despite complaints of

dizziness and fatigue.[145]  However, the ALJ did not explain how Plaintiff's activities of

daily living would translate into the ability to perform full time light level work or how these

activities contradicted Plaintiff's testimony.[146]  The ALJ also did not discuss Plaintiff's

testimony regarding her need for breaks during her daily activities.[147]  Therefore, the

ALJ's reliance on Plaintiff's daily activities as a reason to discount her subjective symptom

testimony is not adequately specific, clear, or convincing.

## C. Scope of Remand

---

[143] *Smith v. Kijakazi,* 14 F.4th 1108, 1114 (9th Cir. 2021) (citing *Orn v. Astrue,* 495 F.3d at 639).

[144] *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).

[145] A.R. 119.

[146] *Id. See Garrison,* 759 F.3d at 1016 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons [ ], and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (internal citation and quotation omitted).

[147] *See e.g.,* A.R. 145–47.

When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation[.]"[148] As discussed above, the ALJ did not provide specific, clear, and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective symptom testimony and complaints. In addition, the ALJ's rejection of ARNP Archer's medical opinion was not supported by substantial evidence. Consequently, additional proceedings may remedy these defects in the ALJ's decision. Therefore, this case is vacated and remanded for further administrative proceedings consistent with this Decision and Order.

## V. ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 9 is GRANTED. The Commissioner's final decision is vacated and remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and consistent with this Decision and Order. The Court directs the Clerk of Court to enter judgment in favor of Plaintiff and close this case.

DATED this 8th day of October, 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[148] *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler,* 775 F.3d at 1099).